Zimmerman, J.,
dissenting. Many people agree, Judges Hart and Bell and the writer being among them, that The Salvation Army is a praiseworthy organization dedicated to the glory of God and to the uplift and betterment of mankind, particularly that portion of mankind which is needy, unfortunate and underprivileged. If we conscientiously could, we would be happy indeed to unite with the majority of our associates in relieving this beneficent institution from the payment of the state succession tax. However, the problem that confronts us is wholly one of law and not of sentiment, and we must be governed accordingly.
In deciding this case four important and cardinal things are to be borne in mind, namely, (1) The Salvation Army is a distinctly religious as well as a charitable organization, (2) the bequest to it, under the will of Adele W. Seaman, is general in terms with no strings attached, and the proceeds thereof may be applied by the Army as it sees fit, (3) taxation is the rule and exemption the exception, and statutory language which relieves from taxation is to be strictly construed against exemption, and (4) exclusively involved are the statutes pertaining to the state succession tax.
Section 5332, General Code (Section 5731.02, Bevised Code), provides:
*60 ‘ ‘ A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution or corporation, in the following cases:
“1. When the succession is by will * * * from a person who was a resident of this state at the time of his death. ’ ’
Under this section the succession to the property which passed to The Salvation Army by the Seaman will is clearly subject to the Ohio tax, but to escape it, the Army relies and must rely on that part of Section 5334, General Code (Section 5731.09, Revised Code), which recites:
“The succession to any property passing to or for the use of * * * an institution for purposes only of public charity, carried on in whole or in substantial part within this state * * * shall not be subject to the provisions of the preceding sections of this subdivision of this chapter.” (Emphasis supplied.)
“Religion” and “charity” though related are by no means the same. The term, “religion,” as it is generally understood in this country has reference to man’s relation to divinity — the recognition of God as an object of worship, love and obedience, with submission to and the carrying out of His will as outlined in the Holy Scriptures, whereas “charity” connotes benevolence, philanthropy and good will toward mankind and, in a narrower sense, help to the poor and needy.
As has been pointed out, The Salvation Army is engaged in both religious and charitable work, with emphasis on the religious side. In this connection, the World Almanac (1956), 718, has the following to say:
“The Salvation Army in the United States is part of an international organization with places of worship and social rehabilitation centers in 89 countries. It was established here in 1880 * # *.
“The major part of the Army’s activity is evangelical work. Founded originally for the religious enlightenment of the masses, its primary aim is to proclaim the message of the Scriptures. As a religious organization it has a distinct ecclesiastical identity, with its cardinal principles of doctrinal belief; its officers are empowered to perform all the functions of the clergy, and a number of officers are chaplains in the armed forces. ’ ’
Had the Seaman bequest to the Army stipulated that the *61 proceeds thereof should be used for purposes only of public charity then no succession tax plight be imposable, but the bequest is general and without restrictions, and the proceeds thereof may be expended at will, and, the Army not being an institution devoted to the purpose of public charity only, the succession can not be exempted from taxation, within the plain wording of Section 5334, General Code (Section 5731.09, Revised Code).
The case of In re Estate of Osborn, 159 Ohio St., 63, 110 N. E. (2d), 791, has relevance here. In that case there was a general bequest to The National Holiness Missionary Society, established to promote world-wide missionary work and Christian service. However, as a very substantial part of the society’s program and representing 74 per cent of its expenditures, it conducted, in its own school buildings and missions, high-school instruction and training in art, craft, sanitation, health and hygiene. The society sought to have the bequest exempted from the succession tax by virtue of Section 5334, General Code, now Section 5731.09, Revised Code, on the ground that it was one to an institution of learning. The Probate Court and the Court of Appeals denied exemption and this court affirmed, holding that the dominance of religion in the society’s activities precluded the exemption. That was the exact basis on which the Osborn case was decided, as an examination of the syllabus and opinion will disclose. Compare In re Estate of Taylor, 139 Ohio St., 417, 40 N. E. (2d), 936.
We submit that, applying the rule of strict construction against exemption, it can not fairly and reasonably be said that the succession to the Seaman property is “to or for the use of an institution for purposes only of public charity.”
Surely, the word, “only,” was placed in the statute by deliberate design and in recognition of the language employed in Section 2, Article XII of the Constitution. The word is plainly there and must be given full recognition and effect. See Tax Commission v. Security Savings Bank & Trust Co. of Toledo, Trustee, 117 Ohio St., 443, 449, 159 N. E., 570, 572.
Therefore, as we view the matter, the Seaman testamentary gift is clearly subject to the Ohio succession tax as was determined by both the Probate Court and the Court of Appeals in *62 reliance on and in harmony with the applicable statutes and prior decisions on the subject. The majority holding to the contrary may well be vulnerable to the charge of judicial legislation.
Hast and Bell, JJ., concur in the foregoing dissenting opinion.